**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SIDNEY WATTS TAYLOR,** | : | **Case No. 1:06-cv-854** |
| | : | |
| | : | **Judge Michael Barrett** |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **H.B. FULLER COMPANY,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

**LAW OFFICE OF MARC MEZIBOV**

/s/ Marc D. Mezibov_____
MARC D. MEZIBOV (OH Bar No. 0019316)
SUSAN M. LAWRENCE (OH Bar No. 0082811)

401 East Court Street, Suite 600
Cincinnati, OH 45202
Telephone:  (513) 621-8800
Fax: (513) 621-8833
mmezibov@mezibov.com
slawrence@mezibov.com

Trial Counsel for Plaintiff Sidney Watts Taylor

# COMBINED TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS.......................................................................2

SUMMARY OF THE ARGUMENT.................................................6

I.   INTRODUCTION..............................................................8

II.  STATEMENT OF THE FACTS........................................9

III. LAW AND ARGUMENT

A.  Summary Judgment Standard.............................................20

Civil Rule 56.......................................................................20
*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1988)........................................................................20
*Middleton v. Reynolds Metals Co.*, 963 F. 2d 881 (6th Cir. 1992)........21
*Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...21
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)................21
*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000)..21

B.  A reasonable jury could find that H.B. Fuller's Blue Ash facility constituted a hostile work environment in violation of Title VII................................................................................21

42 U.S.C. § 2000e-2(a)(1)....................................................21
*Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)..........................21
*Miller v. City of New York*, 177 Fed. Appx 195 (2nd Cir. 2006)................21
*Oncale v. Sundower Offshore Services, Inc.* 523 U.S. 75 (1998)..............21, 22

   1.  A reasonable jury could find that Mr. Taylor was subjected to sexual harassment at H.B. Fuller because he did not conform to traditional gender stereotypes.........................................................22

*Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 (6th Cir. 2006)........22
*Dillon v. Frank*, 952 F.2d 403 (6th Cir. 1992)..................................22
*Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 250-251 (1989)..............22
*Higgins v. New Balance Athletic Shoe, Inc.* 194 F.3d 252, 261 (1st Cir. 1999)................................................................................22,23
*Smith v. City of Salem, Ohio*, 378 F.3d 556 (6th Cir 2004)...........................23
*Nichols v. Azteca*, 378 F.3d 566 (9th Cir. 2004)...............................23

2.  A reasonable jury could find that the unwelcome same-sex harassment Mr. Taylor was subjected to was sufficiently severe and pervasive enough to constitute a hostile work environment........................................................................24

*Randolph v. Dep of Youth Services*, 453 F.3d 724, 733 (6th Cir. 2006)............24

      a.  In the aggregate, the conduct and behavior of Mr. Taylor's co-workers was sufficient to create a hostile work environment..........................................................24

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,116 (2002)................24,25
*Faragher v. City of Boca Raton*, 524U.S. 775 (1998)........................................25
*Williams v. General Motors Corp.*, 187 F.3d 553, 562-563 (6th Cir. 1999)...............................................................................................25,26,27,28
*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008)...............25

      b.  A reasonable person in Mr. Taylor's position could have considered the environment at H.B. Fuller to be hostile..................................................................26

3.  A reasonable jury could find H.B. Fuller responsible for the acts of Mr. Taylor's co-workers................................................28

*Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996).......................28

C.  A reasonable jury could find that H.B. Fuller retaliated against Mr. Taylor for filing an OSHA complaint, EEOC charge, and/or federal lawsuit............................................................................................29

Title 42  U.S.C. § 2000(e)-3(a).............................................................29
*Burlington Northern & Santa Fe Rlwy. Co. v. White*, 548 U.S. 53, 60 (2006).......................................................................................30,33

1. H.B. Fuller's termination letter is direct evidence of retaliation..30

*Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367 (6th Cir. 2002)...........30
*Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921 (6th Cir.1999).......................................................................30
*Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531 (6th Cir.2008)...................................................................................30,39,40
*Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir.2004)..30
*Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 879 (6th Cir.1991)... ..........................................................................................30,31

1.  Mr. Taylor has established a *prima facie* case of retaliation with respect to his termination and formal discipline.................................................................31

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).............................32,33
*Texas Dep. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981)....32,38
*Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).......................32
*Michael v. Caterpillar Financial Serv Corp.*, 496 F.3d 584,595 (6th Cir. 2007)................................................................................................32,33
*Morris v. Oldham County Fiscal Ct.*, 201 F3d 784, 792 (6th Cir. 2000)........32
*Nguyen v. City of Cleveland*, F.3d 559, 563 (6th Cir. 2000)......................32,34
*EEOC v. Avery Dennison Corp.*, 104 F.3d 858,861 (6th Cir. 1997)................32

a.  A reasonable jury could determine that Mr. Taylor has established a *prima facie* case of retaliation with regard to the formal discipline he received in January, 2007..........................................................................................33

*Halfacre v. Home Depot, USA, Inc.*, 221 Fed. Appx. 424,432 (6th Cir. 2007)................................................................................................33
*Campbell v. Univ. of Akron*, 211 Fed. Appx 333, 350 (6th Cir. 2006)..............33
*Morris v. Linau*, 196 F.3d 102 (2nd Cir.1999)......................................33,34
*Upshaw v. Ford Motor Co.*, 2007 WL 1875844,*9 (S.D. Ohi2007)..............34,35
*Jeffries v. Walmart Stories, Inc* 15 Fed. Appx 252, 258 (6th Cir2001)........35,36
*Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir. 1982).......................35

b.  A reasonable jury could determine that Mr. Taylor has established a *prima facie* case of retaliation with regard to his termination.......................................................35

*Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir. 1999)................37

2.  A reasonable jury could determine that H.B. Fuller's explanation for terminating Mr. Taylor was pretext for retaliation..........................................................................38

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)................................................................................................38,39

a.  A reasonable jury could determine that H.B. Fuller's reasons for Mr. Taylor's Termination did not actually motivate his discharge.....................................39

*Gliatta v. Tectum*, 211 F.Supp2d 992, 1004 (S.D. Ohio 2002)...........................39

b. A reasonable jury could conclude that H.B. Fuller's proffered reasons for Mr. Taylor's termination were insufficient to warrant discharge.................................43

i. A reasonable jury could find that H.B. Fuller's assertion that Mr. Taylor improperly used its information to receive, view and transmit sexually explicit content for its own prurient interest is insufficient to warrant termination....43

ii. A reasonable jury could find that H.B. Fuller's assertion that Mr. Taylor violated the company policy on confidentiality is insufficient to warrant termination in this case......................................45

iii. A reasonable jury could find that H.B. Fuller's assertion that Mr. Taylor expressed a desire to no longer work for Fuller and its management is insufficient to warrant termination in this case...46

**IV. Conclusion**..........................................................................................................46

## SUMMARY OF THE ARGUMENT

Defendants Motion for Summary Judgment should be dismissed in its entirety. The record contains genuine issues of material fact on all substantive issues which precludes summary disposition.

In order to establish a hostile work environment claim under Title VII, Mr. Taylor must demonstrate that he was subject to unwelcome harassment on account of his sex and that such harassment was adequately severe and pervasive to create an offensive environment.   While discrimination and/or harassment on the basis of sexual orientation is not actionable under Title VII, discrimination and harassment based on sexual stereotyping can create a colorable claim under the statute.   In this case, a genuine issue of material fact exists regarding whether Mr. Taylor was harassed by his co-workers for his failure to conform to the typical male gender stereotype.   Moreover, the record contains sufficient facts from which a reasonable fact-finder could conclude that H.B. Fuller was responsible for the illegal acts of Mr. Taylor's co-workers.

The evidence is similarly sufficient to permit a reasonable jury to conclude that H.B. Fuller retaliated against Mr. Taylor for filing OSHA complaints, EEOC charges of discrimination and this federal lawsuit.   In fact, the letter advising Mr. Taylor that he was being terminated contains direct evidence of retaliation because it expressly identifies Mr. Taylor's refusal to settle his potential claims against the company as a basis for his termination.

In addition to direct evidence of discrimination, Mr. Taylor has established a prima facie case of retaliation with respect to formal discipline he received as well as his ultimate termination.   Furthermore, Defendant's proffered reasons that he violated company policies regarding confidentiality and the transmittal of explicit materials on

company owned equipment are pretext for retaliation.   Plaintiff has established the existence of genuine issues of fact supporting the proposition that the non-discriminatory reason for Mr. Taylor's discharge advanced by the company did not actually motivate the discharge and/or that the stated reasons for the discharge were insufficient to warrant his termination.

Accordingly, Plaintiff respectfully requests that this Court deny H.B. Fuller's Motion for Summary Judgment in its entirety.

<u>**MEMORANDUM OF LAW**</u>

## I. INTRODUCTION

Defendant, H.B. Fuller Company, has moved for summary judgment on Mr. Taylor's claims for sexual harassment based upon a hostile work environment.

According to Defendant, Mr. Taylor's claim of sexual harassment must fail because the law does not recognize discrimination based upon an individual's sexual orientation.  As the following discussion makes clear, Mr. Taylor's discrimination claim is predicated upon the incontrovertible fact that he was harassed, groped and humiliated, not on account of his sexual orientation but because he was perceived by his co-workers as insufficiently "manly" in his carriage and demeanor.  The law is well established that harassment/discrimination directed at and motivated by an individual's failure to conform to a sexual stereotype, as is demonstrated in this record, is actionable. Defendant's arguments fail to appreciate the quantum and quality of the evidence that speak to Mr. Taylor's assertion that he was subjected to pervasive and severe ridicule, even physical abuse at work because colleagues perceived and treated him as being too feminine.

Defendant's argument to dismiss Mr. Taylor's retaliation claims are similarly unavailing.  According to Defendant, the decision to terminate Mr. Taylor's employment was "unrelated to his allegations of discrimination or his reporting of OSHA violations" (Defendant's Memorandum P. 19).   Even a cursory review of Defendant's arguments on this point reveal that they are self-serving, at best.  The record is replete with facts and inferences reasonably drawn therefrom that support the proposition that not only following, but precisely because of, Mr. Taylor's opposition to discriminatory practices and his participation in protected activities he was summarily terminated.  In short, the

facts in this matter are sharply in dispute and the issue of retaliation cannot be resolved in a summary fashion.

## II.  STATEMENT OF FACTS

### A.    MR. TAYLOR'S EMPLOYMENT AT H.B. FULLER BEFORE 2000.

Mr. Taylor began working for H.B. Fuller, a Minnesota-based manufacturer of specialty chemicals, in 1979 at its Louisville facility. (Deposition of Sidney Watts Taylor at 15). He steadily advanced through the company ranks, receiving numerous promotions and pay raises.  (Id. at 15-17).  In January 2000, after working at H.B. Fuller for more than twenty years, Mr. Taylor accepted a transfer to its Blue Ash location to serve as the facility's technical manager. (Id. at 17-18).

At Blue Ash, Mr. Taylor was part of an eight-member facility management team. (Id. at 20).   He was specifically responsible for quality control and meeting ISO requirements. (Id. at 20).   His annual performance evaluations consistently indicated that he was performing at a satisfactory level or better. (Deposition of Todd Trushenski at 17-18; Deposition of Susan Anderson at 92).  Indeed, H.B. Fuller awarded Mr. Taylor its prestigious Circle of Excellence honor on six occasions. (Anderson Depo. at 94). Prior to the filing of this lawsuit in 2006, Mr. Taylor had **_never_** been disciplined in any manner during the course of his over 20-year career there. (Deposition of Frank Strasser at 41-42).

### B.    HARASSMENT AT THE BLUE ASH FACILITY; LACK OF MEANINGFUL RESPONSE FROM MANAGEMENT.

From the very beginning of his tenure at H.B. Fuller's Blue Ash facility, Mr. Taylor, whose sexual orientation is homosexual, was routinely subjected to inappropriate, harassing and even illegal behavior from his co-workers. Some of the

most egregious incidents, which span the duration of 2000 through 2007 – that is, the entire tenure of his employment at the Blue Ash facility – include the following:

### 1.    Unwelcome Physical Touching by Co-Worker Wayne Harley.

On not one, but **six** occasions beginning in the summer of 2000, Mr. Taylor was groped, "humped" and otherwise touched inappropriately by a long-time H.B. Fuller employee named Wayne Harley. (Taylor Depo. at 95, 107).  On one occasion in 2001, Mr. Taylor was working in the polymer lab when Mr. Harley approached him and, without warning, grabbed Mr. Taylor's genitals, butt and leg. (Taylor Depo. 98-99).  On several other occasions Mr. Harley approached Mr. Taylor from behind, placed his arms around Mr. Taylor's waist and begin "humping" him – that is, simulating a sexual act by rubbing his genitals against Mr. Taylor's backside. (Id. at 99, 105).

Appalled, Mr. Taylor advised Mr. Harley that his touching was unwelcome. (Id. at 99).  When his attempts to directly resolve the situation were unsuccessful, Mr. Taylor reported the problem to his supervisor, Blue Ash facility manager Todd Trushenski in December 2000. (Id. at 99, 106).

H.B. Fuller's Sexual Harassment and Discrimination Policy expressly states that employees who feel they have been harassed – including being subject to unwelcome "physical conduct such as touching" – should report the behavior to their supervisor. (Ex. A, attached).  Mr. Taylor's complaint was undertaken consistent with and in reliance upon this policy. (See Taylor Depo. at 99, 106).  Yet contrary to the company's policy, Mr. Trushenski did not take Mr. Taylor's complaint seriously or investigate it. (Id.).  Instead, Mr. Trushenski immediately directed Mr. Taylor to that he was to ignore

Mr. Harley's behavior in the hope that Mr. Harley would eventually get tired and stop. (Taylor Depo. at 100).

But Mr. Harley did not stop. Instead, his behavior escalated. In February 2001 – just two months later – Mr. Harley and another employee "tag teamed" Mr. Taylor. They approached him from different sides and began humping, groping and touching him in the laboratory. (Taylor Depo. at 100). This incident was not only viewed, but encouraged by another manager named Jerry Striley. (Id.). Mr. Taylor had to physically throw the men off of him, after which Mr. Harley asked Mr. Taylor if he was "switching sides." (Id. at 101, 141).

Mr. Taylor did not report this incident to his facility manager because, in light of his previous response, he believed such would be futile. Instead, Mr. Taylor waited until the following month when he attended training seminar at H.B. Fuller's Minnesota headquarters and reported the incidents to Chuck Smith, the corporate human resources director. (Id. at 108; Deposition of Chuck Smith at 45-47). Mr. Smith recognized that Mr. Harley's behavior violated company policy and had deeply troubled Mr. Taylor. (Smith Depo. at 46-47, 50). He personally investigated the matter on his next scheduled trip to the Blue Ash facility and determined that the incident had indeed occurred. (Id.). In response to what H.B. Fuller's policy calls a "flagrant violation[n]" of company policy that could result in termination, Mr. Smith's reaction to the confirmed violation was limited to moving Mr. Harley to a different shift for one month and requiring that all the employees review a training video entitled "Working Together." (Smith Depo. at 24, 48-49). Mr. Smith took no action against Mr. Trushenski or other employees involved in the harassment or failure to investigate and meaningfully response to the harassment.

Following Mr. Smith's investigation, Mr. Taylor was no longer comfortable working at the Blue Ash facility and formally requested a transfer. (Taylor Depo. at 125, 230; April 20, 2001 Email, attached as Exhibit B).  Mr. Taylor applied for other internal jobs at different locations but did not receive so much as an interview for any of these positions. (Taylor Depo. at 127; Trushenski Depo. at 10-14; Smith Depo. at 40).  Mr. Smith acknowledged Mr. Taylor's problems, but stated that he did not take "any extraordinary steps" – indeed, no steps at all – with regard to Mr. Taylor's transfer request. (Smith Depo. at 41).

Accordingly, Mr. Taylor – just several years away from full retired – was force to remain at the Blue Ash facility.

### 2.     Harassment from Co-Worker Bob Hayes

Notwithstanding the fact that all of the employees in the Blue Ash facility had re-watched a brief training video on discrimination and harassment, the inappropriate and unreasonable behavior directed toward Mr. Taylor did not end.  To the contrary, between the fall of 2004 and the fall of 2005, another H.B. Fuller employee, Bob Hayes, subjected Mr. Taylor to a serious of disturbing incident of harassment – of which shared a similar theme of playing on gender stereotypes.

### a.     Women's Panties Incident

In December 2004, Mr. Taylor was working in his office when a pair of women's panties was thrown onto his desk. (Taylor Depo. at 132).  Upon hearing the panties land on his desk, Mr. Taylor looked up and saw that Bob Hayes was walking briskly away from his office.  (Id. at 133).  Mr. Taylor reported the incident to Frank Strasser who had replaced Mr. Trushenski as facility manager. (Id. at 135; Strasser Depo. at 34).  Mr.

Strasser did not so much as investigate the incident. (Taylor Depo. at 136-137; Strasser Depo. at 35).

### b.    Bloody Diaper Incident

In October 2005, Mr. Taylor returned from lunch to his office to find Mr. Hayes was holding a diaper filled with blood. (Taylor Depo. at 147).  Mr. Hayes approached Mr. Taylor, held up the diaper and asked whether it belonged to Mr. Taylor or "some chick." (Id.).  Mr. Taylor understood the reference to ask whether he was having a menstrual period. (Id. at 176).  Mr. Hayes later admitted to the incident. (Strasser Depo. at 115).

### c.    The Bloody Tampon Incident

Several weeks after the "blood diaper" incident, yet another feminine hygiene item landed on his desk—this time a bloody tampon. (Taylor Depo. at 144).  Mr. Hayes standing over Mr. Taylor's desk, grinning.  (Id. at 144-146).  Mr. Taylor was disgusted and removed the tampon and the paper upon which it landed and threw it in his garbage can. (Id. at 145).  Mr. Hayes retrieved the tampon from the garbage can and attempted to rub it on Mr. Taylor's clothing. (Id.).

Mr. Taylor reported the incident that evening to Mr. Strasser as well as to Susan Anderson, the company's regional human resources director.  He advised both that the incidents were adversely affecting him psychologically[1].  (Taylor Depo. at 149; Strasser Depo. at 36; Ex. C).  Ms. Anderson traveled to the Blue Ash facility early the following week to conduct an investigation of Mr. Taylor's claims and ultimately concluded that Mr. Hayes' behavior had occurred and was inappropriate. (Taylor Depo. at 153; Anderson Depo. at 87-88). Yet again, however, the company "punished" this "flagrant

---

[1] Dr. Sarah Nawaz, Plaintiff's psychiatrist, testified that the incidents involving Bob Hayes greatly increased Mr. Taylor's anxiety levels and led her to increase the amount of medication he took daily.

violation" of company policy simply by requiring Mr. Hayes apologize to Mr. Taylor and undergo "guidance" – the lowest forms of discipline at H.B. Fuller. (Strasser Depo. at 32, 37).

### 3.     Unwelcome touching from manager Bob Boice.

Two weeks after the tampon incident, H.B. Fuller required all employees to attend a harassment training program conducted by Ms. Anderson. (Taylor Depo. at 156).  Immediately after the presentation was complete, Bob Boice, a fellow manager, grabbed Mr. Taylor from behind, put his arms around him, lifted him up in the air and told him that "I've got you where I want you.  You aren't getting away."  (Id. at 156-157, Ex. D).  Mr. Boice held Plaintiff off the floor for five to ten seconds. (Id. at 157).  Mr. Taylor asked Mr. Boice several times to release him before he did. (Ex. D).

Mr. Taylor reported the incident to Susan Anderson and Frank Strasser via email. (Taylor Depo. at 160-161).  He reminded them of the harassment that he had dealt with mere weeks ago and explained that the accumulation of events had taken a serious toll on his mental and physical health. (Ex. D).  According to Mr. Strasser, Mr. Boice was given a verbal warning for his conduct.  (Strasser Depo. at 104).  Effectively, so was Mr. Taylor.  Mr. Strasser met with Mr. Taylor and downplayed both the tampon incident and the bear hug, telling him that he believed the "tampon" had was meant to be a firecracker and that Mr. Boice was merely horsing around with him. (Taylor Depo. at 174; Strasser Depo. at 107-108).

### 4.     Pornography at H.B. Fuller

On several occasions, Mr. Taylor, without invitation or encouragement by him, was shown pornographic images by coworkers.

On one occasion, Bob Boice gave Mr. Taylor a photograph of a supposed body-builder, who was performing squats while defecating at the same time.  (Id. at 158, 199-200).  On another more troubling occasion, Mr. Taylor found Mr. Boice, the production manager, gathered with his subordinate employees around a computer watching the male-on-male rape scene from *Deliverance* over and over again. (Taylor Depo. at 170-172).  Mr. Taylor reported this to Ms. Anderson, who told him that he should simply ask the employees to put the material away. (Anderson Depo. at 99).

On another occasion, Mr. Taylor reported an image of depicting bestiality that had been drawn in the factory to Mr. Strasser.  Mr. Strasser ordered Mr. Taylor to clean it up. (Taylor Depo. at 137-138; Strasser Depo. at 115-116).

### 5.    A Co-worker's Perspective

Mr. Taylor's co-worker, Dave Cochran, described the environment at H.B. Fuller with regard to Mr. Taylor as "abusive" and "intolerable."  (Deposition of Dave Cochran at 31).  Indeed, Mr. Cochran stated that co-workers made ridiculing comments to and about Mr. Taylor on a __weekly__ basis relating to sexual issues.  (Id. at 29-30).

### C.    MR. TAYLOR ENGAGES IN PROTECTED ACTIVITY.

In February 2006, Mr. Taylor engaged in two types of protected activities:  he filed a charge of discrimination with the EEOC relating to his ongoing harassment.[2]

He also filed a complaint with OSHA[3] relating to several safety concerns which he had raised with manager including Mr. Strasser, but were either ignored altogether or not adequately remedied.  (Taylor Depo. 176-178, 252-253).  As part of Mr. Taylor's job duties including responsibility for safety. (Id. at 182).  After repeatedly raising these

---

[2] Mr. Taylor filed an additional charge with the EEOC in August of the same year, alleging retaliation and harassment. (Ex. E).  He received right to sue notices for both charges. (Exs. F1, F2).

[3] Occupational Safety and Health Administration.

safety issues without avail internally, Mr. Taylor forwarded his concerns directly to OSHA.  In response to Mr. Taylor's complaint, OSHA conducted a safety audit of the Blue Ash facility which resulted in 11 citations against H.B. Fuller and a fine of approximately $8,000. (Taylor Depo. at 191; Strasser Depo. at 123-128).

Although Mr. Taylor filed the complaint anonymously, several H.B. Fuller's became aware of his actions.  Fellow employee Dave Cochran had assisted Mr. Taylor in gathering information for the OSHA complaint. (Taylor Depo. at 335). Mr. Taylor advised Ms. Anderson in an e-mail that he had filed the Complaint with OSHA. (Anderson Aff. ¶ 13).  A few months later at Mr. Taylor's EEOC mediation in May 2006, H.B. Fuller viewed Mr. Taylor's personal journal that indicated his involvement in the OSHA complaint. (Taylor Depo. at 255-256; Strasser Depo. at 125).

### D.    THE BACKLASH – AND A DEATH THREAT.

When fellow employees speculated that Mr. Taylor had been responsible for the OSHA complaint, Mr. Taylor was subjected to a backlash that started at the very top of the facility and worked its way down through the ranks.

At the top, facility manager Frank Strasser advised employees that because of the complaint to OSHA from a fellow employee – notwithstanding the confirmed violations therein by the company – employees would not receive bonuses for the year.  (Strasser Depo. at 70; Anderson Depo. at 104-105; 114).  This set off a firestorm.

In late March 2006, Dennis Judd, an employee in the Blue Ash facility's shipping department with whom Mr. Taylor rarely spoke warned Mr. Taylor that "whenever he finds out who the whistleblower was, he will take him off site and teach him a lesson." (Taylor Depo. at 337).  Ms. Anderson confirmed that Mr. Judd had indeed made the

statement and gave him a verbal warning about threatening his co-workers. (Anderson Depo. at 103).

On several occasions, Mr. Taylor's car was vandalized with spray paint in the parking lot. (Taylor Depo. at 96). Mr. Taylor reported the incidents, but neither Mr. Strasser nor Ms. Anderson responded to it meaningfully. (Anderson Depo. at 90-91; Strasser at 105).

The backlash that had been brewing came to a head on June 13, 2006, when Mr. Taylor entered his office and noticed a newspaper clipping lying on the floor.  (Taylor Depo. 210).  The newspaper article – which was a commentary on gay marriage – had the words "DIE OSHA FAG" written across it large red letters. (Id. at 207-209; Cochran Depo. at 14-15, Ex. G).  Mr. Taylor sent an email to Susan Anderson and Frank Strasser expressing his serious concerns about the threat. (Taylor Depo. at 208-209, Ex. H).  He also filed a police report. (Taylor Depo. at 218).

H.B. Fuller sent a Minneapolis attorney to the Blue Ash facility to investigate the death threat. (Anderson Aff. ¶ 15).  The investigation, however, was "inconclusive."

### E.   Mr. Taylor files this lawsuit.

In December 2006, Mr. Taylor filed this lawsuit alleging sex discrimination, hostile work environment and retaliation. (See Complaint).  Just weeks later, H.B. Fuller seized Mr. Taylor's computer and made a "mirror image" of his hard drive. (Taylor Depo. at 329-330; Trushenski Depo. at 41-42).

### F.   Mr. Taylor is formally disciplined.

In early January 2007, Mr. Taylor observed a debate between Bob Boice and Edward Shoemaker, another manager at the facility.  (Ex. I).  During their discussion, Mr. Shoemaker warned Mr. Boice that if he drew on the instruction manual he would

"kill him." (Id.).  Concerned that the two men were behaving inappropriately in front of subordinate employees, Mr. Taylor attempted to defuse the situation and asked Mr. Boice to meet him in another part of the facility.  (Id.). Mr. Taylor sent both Mr. Strasser and Ms. Anderson an email about the incident. (Id.; Strasser Depo. at 45).  He was the first and only person to report the incident; Mr. Boice did not complain.  (Strasser Depo. at 45).

Three weeks later on January 30, 2007, Mr. Strasser disciplined Mr. Taylor for failing to report Mr. Shoemaker's "kill you" comment in a timely manner. (Id. at 55-56). Mr. Strasser claimed that Plaintiff had violated the company's discrimination and harassment policy by waiting to report the incident for three days.  (Id. at 58).  This was the first time Plaintiff had been formally disciplined in his 25 years with the company. (Id. at 41-42).  Notably, neither Mr. Boice nor Mr. Shoemaker, the two men involved in the original dispute, was disciplined for *their* failure to timely report the incident.

### G.   MR. TAYLOR REFUSES H.B. FULLER'S SETTLEMENT OFFER AND RETAINS NEW COUNSEL; HE IS FIRED 2 DAYS LATER.

In and around February 2007, Mr. Taylor's then-trial counsel Geoffery Damon and H.B. Fuller's trial counsel engaged in discussions about resolving Mr. Taylor's claims.  When those discussions broke down in early March 2007, H.B. Fuller hired an outside computer expert to examine Mr. Taylor's laptop for the purpose of retrieving any image or document which had ever been on Mr. Taylor's computer in any capacity. (Wunsch Declaration at ¶¶ 1-3). Chuck Smith, an HR director based out of the company's headquarters in Minnesota, testified that this was the first and **only** instance

in his memory in which a current employee's computer had been examined to see if it was being used improperly[4]. (Smith Depo. at 32).

The "discovery" of this material on Mr. Taylor's computer led to a series of conference calls between Susan Anderson, Fred Strasser, Todd Trushenski and several other members of H.B. Fuller management – with the focus of these conversations whether there was sufficient grounds to terminate Mr. Taylor.  (Strasser Depo. at 39-41; Trushenski Depo. at 56).  No notes were taken at these conference despite the fact that it was standard operating procedure at H.B. Fuller to do so. (Trushenski Depo. at 56; Anderson Depo. at 31).

At this same time, Mr. Taylor, unhappy with his trial counsel, sought the services of the undersigned counsel.  (Affidavit of Marc Mezibov, Esq., attached as Ex. J).  The undersigned spoke with H.B. Fuller's trial counsel, Donald Mooney, on March 21, 2008. (Id.).  During that conversation, the undersigned advised Mr. Mooney that Mr. Taylor had retained my firm as counsel and would not approve any settlement that had been discussed between Mr. Mooney and his former trial counsel.  (Id.).

Two days later, H.B. Fuller terminated Mr. Taylor.  (Id.).  Following notice of Mr. Taylor's intention to file legal action against it, on March 23, 2007, H.B. Fuller informed Mr. Taylor that "as a result" of his failure to accept the severance package they had offered, the company was firing him immediately. (Ex. K).  The company also cited (1) alleged violations of H.B. Fuller's I.T. policies; (2) alleged violation of confidentiality obligations; (3) alleged failure to report actions which violated company policy; and (4) alleged disrespect for the company, as support for its decision. (Id.).

---

[4] Frank Strasser admits that the company was not searching Mr. Taylor's computer out of any particularized concern that a document or program might be compromised or lost. (Strasser Depo. at 76).

H.B. Fuller decision makers Susan Anderson, Todd Trushenski and Frank Strasser fired Mr. Taylor after 27 years of employment without interviewing him (Anderson Depo. at 58; Trushenski Depo. at 40),  without making any effort to determine how the images got on his computer or whether and when they had been accessed by Mr. Taylor (Anderson Depo. at 12; Trushenski Depo. at 34, 37-38), without consulting company policies to determine whether Mr. Taylor's conduct had violated company policy (Anderson Depo. at 39-41, 65-66; Strasser Depo. at 82), and without factoring in Mr. Taylor's length of exemplary service and performance at the company (Anderson Depo. at 92-93). Indeed, these decision-makers acknowledged that terminating Mr. Taylor under the circumstances was unusual as H.B. Fuller's discipline policy generally encouraged management to administer progressive discipline and work with the offending employee. The policy did not require Mr. Taylor's immediate termination. (Trushenski Depo. at 61; Anderson Depo. at 29; (Ex. L).

Despite reasonable efforts to mitigate his damages, Mr. Taylor has been unable to find comparable employment.

### III.  LAW AND ARGUMENT

**A**. **SUMMARY JUDGMENT STANDARD.**

Under Civ. R. 56, a motion for summary judgment can only be properly granted when **no** genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998). To defeat a motion for summary judgment, all that need exist is **one** genuine issue of material fact. *See Middleton v. Reynolds Metals Co.*, 963 F.2d 881 (6th Cir. 1992).

In determining whether a genuine issue of material fact exists, all inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 255 (1986). Additionally, the court should give credence to evidence favoring the non-movant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000)(emphasis added); *citing Anderson*, 477 U.S. at 300.

## B.  A REASONABLE JURY COULD FIND THAT H.B. FULLER'S BLUE ASH FACILITY CONSTITUTED A HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an individual with respect to the terms or conditions of his employment based upon considerations of sex. 42 U.S.C. § 2000e-2(a)(1). Accordingly, sexual harassment in the workplace which "alters the conditions of the victim's employment and creates an abusive work environment" violates Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986).

In order to survive summary judgment Plaintiff must demonstrate a genuine issue of fact regarding whether the sexual harassment and/or discrimination alleged was severe and pervasive enough to create an environment that would reasonably be perceived and is actually perceived as hostile. *Miller v. City of New York*, 177 Fed. Appx. 195 (2nd Cir. 2006); *see also Oncale v. Sundowner Offshore Services Inc.*, 523 U.S. 75 (1998). Because Mr. Taylor was routinely subjected to inappropriate and unwanted

touching, lewd behavior and offensive comments on account of his sex, a genuine issue of material fact clearly exists regarding whether H.B. Fuller's Blue Ash facility constituted a hostile work environment.

### 1. A reasonable jury could find that Mr. Taylor was subjected to sexual harassment at H.B. Fuller because he did not conform to traditional gender stereotypes.

In order to establish a hostile work environment claim under Title VII, Plaintiff must demonstrate that he was subject to unwelcome harassment on account of his sex. *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 (6th Cir. 2006).  Defendant contends that Mr. Taylor cannot satisfy this element because homosexuality is not a protected category under the statute. (MSJ at 13).  However, while it is true that discrimination and/or harassment on the basis of sexual orientation is not actionable[5], discrimination and/or harassment on the basis of sex stereotyping *can* create a colorable claim under the statute. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 250-251 (1989).

Specifically, if a plaintiff can demonstrate that he or she was harassed or discriminated against in the workplace for failing to conform to typical male/female stereotypes, that individual will have satisfied the requirement that the adverse action(s) be attributable to his or her sex. *See Id.* (holding that in the specific context of sex stereotyping, an employer who acts on the basis of a belief that a women cannot be aggressive, or that she must not be, has acted on the basis of gender).  This doctrine applies to same sex plaintiffs just as it does to opposite sex plaintiffs. *See Oncale* at 79 (sex discrimination consisting of same-sex sexual harassment is actionable under Title VII); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261 (1st Cir. 1999) (a

---

[5] *See Dillon v. Frank*, 952 F.2d 403 (6th Cir. 1992).

man can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity).

The Sixth Circuit found that a police officer properly alleged a claim for sex stereotyping when his co-workers commented that his appearance and mannerisms were not "masculine" enough and that his employment was terminated as a result. *Smith v. City of Salem, Ohio*, 378 F.3d 566 (6th Cir. 2004).  Similarly, the 9th Circuit upheld a hostile work environment claim by a waiter who demonstrated that his male coworkers repeatedly referred to him as "she" and "her" and mocked him for walking and carrying his serving tray "like a woman." *Nichols v. Azteca*, 378 F.3d 566 (9th Cir. 2004).

In this case, a genuine issue of material fact exists regarding whether Mr. Taylor was harassed by his co-workers because he did not conform to typical gender stereotypes.  This is evident by the fact that much of the harassment directed at Mr. Taylor revolved around the idea that he was somehow lacking in masculinity, such as when a pair of women's underwear was thrown on his desk. (Taylor Depo. at 132). Furthermore, Bob Boice explicitly questioned Mr. Taylor's manhood when he asked if the bloodied diaper belonged to him or "some chick." (Id. at 147).  The tampon incident also unequivocally reflects the view that Mr. Taylor was somehow less masculine than his co-workers, as Plaintiff testified that "Tampons are generally in the territory of women's paraphernalia...it isn't something that a man was normally expected to have. Neither is a bloody diaper.  The reference is that I was having a period." (Id. at 176). The groping and humping incidents also support a gender stereotyping claim; Mr. Taylor's co-workers were treating him as if he were a woman rather than a man. Accordingly, Mr. Taylor has certainly alleged a genuine issue of material fact regarding

whether he was harassed on the basis of sex for the purpose of proving his hostile work environment claim.

### 2. A reasonable jury could find that the unwelcome same-sex harassment Mr. Taylor was subjected to was sufficiently severe and pervasive to constitute a hostile work environment.

H.B. Fuller contends that even if Plaintiff proves that he was the victim of harassment because of his sex, such harassment was not sufficient to create a hostile work environment. (SJ Motion at 17-18).  Fuller bases this assertion on the following two arguments: (1) The conduct of Mr. Taylor's co-workers consisted of isolated and minor incidents insufficient to create a hostile work environment; and (2) a reasonable person in Mr. Taylor's position would not have considered the environment to be hostile[6]. (Id.).  However, if all inferences are drawn in the light most favorable to the Plaintiff as required by Rule 56, neither argument is sufficient to defeat Mr. Taylor's hostile work environment claim at this stage.

#### A. IN THE AGGREGATE, THE CONDUCT AND BEHAVIOR OF MR. TAYLOR'S CO-WORKERS WAS SUFFICIENT TO CREATE A HOSTILE WORK ENVIRONMENT.

In determining whether a hostile work environment is actionable under Title VII, courts must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), *citing Harris*, 510 U.S. at 23.  Furthermore, courts must look at the totality of the circumstances in deciding whether a hostile work

---

[6] Defendant appears to concede for the purpose of its motion that Mr. Taylor subjectively perceived the Blue Ash facility to be a hostile work environment. *See Randolph v. Dep. of Youth Services*, 453 F.3d 724, 733 (6th Cir. 2006) (Both an objective and a subjective test must be met to sustain a Title VII hostile work environment claim).

environment exists. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  As the Sixth

Circuit explains in *Williams v. General Motors Corp.*:

> The totality of the circumstances test must be construed to mean that
> even where individual instances of sexual harassment do not on their
> own create a hostile environment, the accumulated effect of such
> incidents may result in a Title VII violation...The severe and pervasive
> analysis cannot carve the work environment into a series of discrete
> incidents and measure the harm adhering in each episode.  Rather, a
> holistic perspective is necessary, keeping in mind that each successive
> episode has its predecessors, that the impact of the separate incidents
> may accumulate, and that the work environment created thereby may
> exceed the sum of the individual episodes.

187 F.3d 553, 562-563 (6th Cir. 1999).

Under this analysis, a question of fact is clearly raised regarding whether H.B.

Fuller's Blue Ash facility constituted a hostile work environment for Mr. Taylor.  First,

many of the incidents of which Mr. Taylor complains involved an element of physical

contact.  These include the six occasions on which Mr. Taylor was groped, humped and/

or fondled by Wayne Harley[7], the time Mr. Hayes rubbed what appeared to be a bloody

tampon on his clothes and the incident in which Mr. Hayes grabbed him from behind,

held him up in the air and told him that he "had him where he wanted him." (Taylor

Depo. at 95, 107, 145 and 156-157).  *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321,

334 (6th Cir. 2008) (harassment involving an element of physical invasion is more

severe than harassing comments alone); *see also Williams*, 187 F.3d at 563 (Harassing

---

[7] Although Defendant claims that the Wayne Harley incidents cannot be included in determining whether
Mr. Taylor was subject to severe and pervasive harassment because Mr. Taylor did not file an EEOC claim
in 2001, such assertion is misplaced.  As the Supreme Court explains in *National R.R. Passenger Corp.*, "a
hostile work environment claim is composed of a series of separate acts that collectively constitute one
'unlawful employment practice.' The timely filing provision only requires that a Title VII plaintiff file a
charge within a certain number of days after the unlawful practice happened.  It does not matter, for
purposes of the statute, that some of the component acts of the hostile work environment fall outside the
statutory time period. Provided that an act contributing to the claim occurs within the filing period, the
entire period of the hostile work environment may be considered by a court for the purposes of
determining liability." 536 U.S. at 117.  Here, two of the three Bob Hayes incidents fall within the filing
period, as did the Bob Boice bear hug.

comments and one act of touching contained an element of physical invasion that, "at a minimum...raise[d] a question of fact for the jury" and could not properly be dismissed on summary judgment).

Several of the Bob Hayes incidents, including the one in which Mr. Hayes asked Plaintiff whether or not a bloody diaper belonged to him or "some chick" were undeniably humiliating. Furthermore, the offensive and harassing conduct was far more frequent than Defendant suggests, Mr. Harley fondled him on a *half dozen* occasions, Mr. Hayes presented him with apparently bloodied feminine products twice within a two week period and he verbally ridiculed on a weekly basis. (Taylor Depo. at 95, 107, 144; Cochran Depo. at 29-30). Accordingly, while any one of these episodes standing alone may not have been sufficient to warrant a claim under Title VII, looking at the "entire constellation" of events, Mr. Taylor has at the least raised a genuine issue of fact regarding whether his co-worker's conduct was severe and pervasive enough to create a hostile work environment. *See General Motors* 187 F.3d at 562 (the district court erred in breaking the complaints up into their theoretical components to determine plaintiff should proceed past summary judgment).

### B. A REASONABLE PERSON IN MR. TAYLOR'S POSITION COULD HAVE CONSIDERED THE ENVIRONMENT AT H.B. FULLER TO BE HOSTILE.

Defendant contends that a reasonable person in Mr. Taylor's position would not have found H.B. Fuller's Blue Ash facility offensive and that Mr. Taylor is simply hypersensitive due to a history of childhood abuse. (Motion for SJ at 18-19). Fuller bases this assertion on the fact that its Blue Ash facility is a "blue collar working environment" where "it is not surprising" that the employees "use bad language or engage in the type of foolishness not uncommon at any factory." (Id. at 15, 18).

In *General Motors*, the Sixth Circuit squarely rejected the theory that the standard for sexual harassment varies depending on the work environment. 187 F.3d at 564. Finding such an argument to be illogical, the court noted that to hold a factory to a standard different than that of other workplaces would effectively mean that "the more hostile the environment, and the more prevalent the sexism, the more difficult it would be for a Title VII plaintiff to prove that sex-based conduct is sufficiently pervasive to constitute a hostile work environment." Id. The Court went on to note that conduct which would not be acceptable to a reasonable person in a federal courthouse should not be acceptable in a factory. Id.

Here, a reasonable person (or jury) could easily determine that the offensive conduct which took place at Defendant's Blue Ash facility—unwelcome groping, humping, fondling and the throwing of women's undergarments and feminine products, among other things—was sufficiently severe and pervasive to constitute a hostile working environment. The fact that it took place in a factory does not change this analysis.

Furthermore, Defendant's assertion that Mr. Taylor considers himself "very sensitive" because of his history of childhood abuse is inconsistent with the testimony in this case. (Motion for SJ at 19). During his deposition, Defendant's counsel asked Mr. Taylor whether his childhood experience made him more sensitive to the Wayne Harley incidents, to which Plaintiff replied: "Does it make me any more sensitive than the average man who has been harassed by a colleague? I doubt it. Inappropriate is inappropriate if it's in the workplace. (Taylor Depo. at 143). Plaintiff's psychiatrist also testified to the fact she does not believe Mr. Taylor is overly sensitive to the "rough and tumble of every day life." (Nawaz Depo. at 104-105).

Accordingly, a genuine issue of material fact remains as to whether or not a reasonable person would consider H.B. Fuller's Blue Ash facility an objectively hostile work environment.

### 3.  A reasonable jury could find H.B. Fuller responsible for the acts of Mr. Taylor's co-workers.

H.B. Fuller's final argument against Mr. Taylor's hostile work environment claim asserts that the company cannot be held responsible for the acts of its employees because it investigated the DIE OSHA FAG note and has an anti-harassment and discrimination policy in place. (Motion for SJ at 16).  However, while the existence of such a policy is a factor to be considered in determining whether a company may be held liable, it is not dispositive.

Rather, to impute liability on an employer for co-worker harassment in a Title VII case, the Sixth Circuit only requires the plaintiff to show that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Williams*, 187 F.3d at 561, *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996) (the standard "is one of failure-to-correct-after-notice or duty to act after knowledge of harm").

While it is true in this case that Fuller investigated the DIE OSHA Fag notice, the company failed on numerous prior occasions to effectively act on Mr. Taylor's complaints after being put on notice of them.  The most egregious failure occurred when Mr. Taylor reported multiple incidents of being groped, fondled and humped by Wayne Harley to Todd Trushenski, Plaintiff's supervisor and the highest ranking official in the Blue Ash facility. (Taylor Depo. at 99, 106).   Although Mr. Trushenski was the appropriate person to report the conduct to and had a duty under the company's anti-

harassment policy to take some action, he merely advised Mr. Taylor to ignore the behavior because Mr. Harley would eventually get tired of it and stop. (Taylor Depo. at 100). Such advice is clearly not the "prompt and appropriate corrective action" envisioned by the Sixth Circuit; shortly after this conversation Wayne Harley's behavior actually escalated and became more aggressive. (Id. at 100).

In addition to Mr. Trushenski's explicit refusal to rectify Wayne Harley's behavior, H.B. Fuller failed to implement corrective measures in other instances as well. For instance, in December of 2004 Mr. Taylor reported to Frank Strasser, Mr. Trushenski's successor, that someone had thrown women's panties on his desk and that he had seen Bob Hayes near his office when it happened. (Taylor Depo. at 132-135; Strasser Depo. at 34). Despite this report, Mr. Strasser did not investigate the incident or take any further action to remedy the situation. (Taylor Depo. at 136-137; Strasser Depo. at 35).

Based on the above, it is clear that a genuine issue of material fact exists regarding whether H.B. Fuller can be held liable for the offensive actions of its employees due to its failure to institute remedial measures after being informed by Mr. Taylor of harassing conduct.

### C. A REASONABLE JURY COULD FIND THAT H.B. FULLER RETALIATED AGAINST MR. TAYLOR FOR FILING AN OSHA COMPLAINT, EEOC CHARGE AND/OR FEDERAL LAWSUIT.

Title 42 U.S.C. § 2000(e)-3(a) prohibits retaliation against an employee because he has opposed an unlawful employment practice or because he has "made a charge, testified, assisted or participated in any manner in an investigation proceeding or hearing in connection with an unlawful employment practice." This provision is designed to prevent employers from interfering with an employee's efforts to secure or

advance enforcement of the substantive provisions of Title VII[8].  *Burlington Northern & Santa Fe Rlwy. Co. v. White*, 548 U.S. 53, 60 (2006).

In its Motion for Summary Judgment, Defendant contends that Mr. Taylor has failed to show that his termination from H.B. Fuller was the result of retaliatory animus on behalf of the company's management. (Motion for SJ at 25).   However, if all inferences are drawn in the light most favorable to the Plaintiff as required by Rule 56, not only is it apparent that Mr. Taylor's termination is attributable to retaliation, but so too is the discipline he received one month earlier.   Accordingly, Defendant's motion should be denied.

### 1.  H.B. Fuller's termination letter is direct evidence of retaliation.

Where a plaintiff presents direct evidence of retaliation, the trial court does not analyze his claim under the *McDonnell Douglas* framework governing purely circumstantial cases. *Weigel v. Baptist Hospital of East Tenn.*, 302 F.3d 367, 381 (6th Cir.2002). Rather, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision even absent its retaliatory motive. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999); citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244-45 (1989).

"[D]irect evidence is evidence that proves the existence of a fact without requiring any inference." *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 543-544 (6th Cir.2008); *Rowan v. Lockheed Martin Energy Sys.,* 360 F.3d 544, 548 (6th Cir.2004). In the retaliation context, it is such evidence which, if believed, requires the conclusion that retaliation for protected activity was at least a motivating factor in the employer's actions. *Jacklyn,* 176 F.3d at 926.  In *Christopher v. Stouder Memorial Hosp.,* 936 F.2d

---

[8] The anti-retaliation provision in the OSHA statute serves an identical purpose. *See*

870, 879 (6th Cir.1991), the Sixth Circuit held that a memorandum from a hospital executive expressly referencing a scrub nurse's sex discrimination lawsuit as a basis for the termination of her privileges at the hospital was, if believed, direct evidence of retaliation.

Like *Christopher,* the termination letter issued to Mr. Taylor by facility manager and decision-maker Frank Strasser also expressly references Mr. Taylor's lawsuit – specifically his refusal to settle it – as a basis for his termination.  In the letter, Mr. Strasser expressly stated:

> We understand through your new attorney that you do not consider yourself bound by the agreement for severance in lieu of termination that your original attorney had indicated you had accepted.  **As a result, your employment with H.B. Fuller has been terminated effective March 17, 2007**. (Exhibit K, emphasis added).

A reasonable jury could find that Mr. Strasser, by his own written admission, terminated Mr. Taylor's employment at least in part because Mr. Taylor had refused to accept the settlement H.B. Fuller had offered to him and dismiss his complaint.  *Id.*

H.B. Fuller has set forth no evidence that it would have made the same decision to terminate Mr. Taylor's employment absent its retaliatory motive.  To the contrary, for the same reasons as those set forth in Mr. Taylor's pretext argument above, a reasonable jury could find that the other reasons set forth in Mr. Strasser's letter (e.g., confidential violations, computer use violations) were either insufficient to warrant Mr. Taylor's termination and/or not the actual reason for his termination. (See pp. 39-47).

Accordingly, Defendant's motion for summary judgment on the retaliation claim must fail.

**2.  Mr. Taylor has established a prima facie case of retaliation with a respect to his termination and formal discipline.**

In the absence of direct evidence of retaliation, Mr. Taylor can present circumstantial evidence through the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Texas Dep. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). Under that analysis, Mr. Taylor bears the initial burden of demonstrating the prima facie elements his retaliation claim. *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). If he succeeds, this "creates a rebuttable presumption of retaliation, and the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for taking the challenged employment action." *Id.* Only if H.B. Fuller meets this obligation does the burden shift back to Mr. Taylor to "prove that the proffered reason was actually pretext." *See Id.*

In order to establish a prima facie case of retaliation, Mr. Taylor must show that: (1) he engaged in activity protected by Title VII; (2) his exercise of protected rights was known to defendant; (3) defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Michael v. Caterpillar Financial Serv. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007), *citing Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), *citing EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). Furthermore, for the purpose of its summary judgment motion, Defendant has conceded the first and second elements of the analysis[9]. (Motion for SJ at 20).

---

[9] Defendant does not dispute that Plaintiff (1) engaged in protected activity (2) of which H.B. Fuller was aware. With respect to Mr. Taylor's retaliation claim arising out of his termination, Defendant also concedes the third element, that Plaintiff's termination was an adverse action. (Motion for SJ at 20).

a. A REASONABLE JURY COULD DETERMINE THAT MR. TAYLOR HAS ESTABLISHED A PRIMA FACIE CASE OF RETALIATION WITH REGARD TO THE FORMAL DISCIPLINE HE RECEIVED IN JANUARY, 2007.

On January 30, 2007—barely one month after filing this lawsuit--Mr. Taylor was formally disciplined for the first time in the history of his employment with H.B. Fuller for failing to timely report Mr. Shoemaker's "death threat" directed to Mr. Boice. (Taylor Depo. at 41-42, 55-56). Mr. Taylor believes this discipline was the product of retaliation. Because Defendant has assumed the first and second elements of a prima facie case of retaliation for the purpose of its motion, Mr. Taylor need only show that the action was adverse and causally connected to his protected activity in order to meet his initial burden under the *McDonnel Douglas* framework. 411 U.S. 792.

Mr. Taylor can present a genuine issue of fact regarding whether his discipline constituted an adverse action. A plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context. *Michael*, 496 F.3d at 595-596, citing *Burlington*, 548 U.S. at 67. Accordingly, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington* at 67-68. In the Sixth Circuit, even the seemingly trivial action of a supervisor failing to invite an employee to lunch might be sufficient to meet this standard. *See Halfacre v. Home Depot, USA, Inc.*, 221 Fed.Appx. 424, 432 (6th Cir. 2007).

H.B. Fuller's decision to administer formal discipline to Mr. Taylor for the first time in his 25 plus year career with the company is adequate to demonstrate an adverse employment action in the retaliation context. *See Campbell v. Univ. of Akron*, 211 Fed. Appx. 333, 350 (6th Cir. 2006) (verbal warning may be sufficient to constitute an adverse employment action); *Morris v. Linau*, 196 F.3d 102 (2nd Cir. 1999) (Adverse

employment actions include reprimands).  For a veteran employee such as Taylor, being called into a meeting with his direct supervisor and the regional human resources director to receive a formal reprimand was a significant event, one that might well dissuade a reasonable worker from engaging in protected activity in the future. Accordingly, Mr. Taylor has created a genuine issue of material fact regarding whether his January, 2007 discipline was an adverse action for the purpose of establishing a prima facie case of retaliation.

The final factor in establishing a prime facie case, whether there was a causal connection between the adverse action and the Plaintiff's engagement in protected activity, is also satisfied here. At the prima facie stage of a Title VII retaliation case the burden with respect to establishing a causal link between protected activity and an adverse employment action is minimal. *Nguyen*, 229 F.3d at 566.  A plaintiff need only "establish that the protected activity and the adverse action were not wholly unrelated." *Upshaw v. Ford Motor Co.*, 2007 WL 1875844, *9 (S.D. Ohio 2007).  Although no single factor is dispositive in establishing a causal connection, "evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen*, 229 F.3d at 563.

Here, both factors are present.  Mr. Taylor was disciplined less than one month after filing this lawsuit in federal court. (Taylor at 55, 56).  This relatively short length of time provides a strong inference that the two occurrences were related.  *See Campbell*, 211 Fed. Appx. at 351 (Cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months). Also, Plaintiff was treated differently from other similarly situated employees,

specifically managers Ed Shoemaker and Bob Boice, neither of whom reported the death threat before Mr. Taylor but were not disciplined for failure to timely report.

Furthermore, the fact that the rule Mr. Taylor allegedly broke does not either (a) set forth a specific amount of time in which he has a duty to report an incident or (b) apply to situations other than those relating to discrimination or harassment for membership in a protected category indicates that Mr. Strasser may have had another motive for disciplining Mr. Taylor. *See Jeffries v. Walmart Stories, Inc.*, 15 Fed. Appx. 252, 258 (6th Cir. 2001) (The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive), *citing Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir. 1982).

In light of the above, Plaintiff has carried his relatively low burden of proving a prima facie case of retaliation with respect to the discipline he received in January 2007. Because Defendant did not raise a legitimate non-discriminatory reason for administering this discipline in its Motion for Summary Judgment, Plaintiff should be permitted to proceed past summary judgment in regard to this claim.

b. A REASONABLE JURY COULD DETERMINE THAT MR. TAYLOR HAS ESTABLISHED A PRIMA FACIE CASE OF RETALIATION WITH REGARD TO HIS TERMINATION.

Defendant argues that Plaintiff is unable to meet the relatively low bar of establishing a prima facie case of retaliation with respect to his termination because he cannot demonstrate the existence of a causal connection between it and his protected activity. (Defendant's Motion for SJ at 20). Specifically, H.B. Fuller suggests that since Mr. Taylor's termination occurred almost a full year after his initial EEOC and OSHA

filings a causal connection inference should not arise. (Id. at 20).   This reasoning is misplaced for several reasons.

First, the mere fact that a length of time beyond six months has elapsed since Mr. Taylor's initial protected conduct is insufficient to warrant a finding of no causal connection.  In *Upshaw*, this court found that although the plaintiff's termination came almost 19 months after her initial EEOC charge, the fact that she had made two additional charges and filed her lawsuit only four months before she was fired was sufficient to demonstrate temporal proximity. 2007 WL 1875844 *10.  The facts in this case are similar; after Mr. Taylor filed his initial EEOC charge and OSHA complaint in February 2006, he later filed another OSHA charge in April, 2006 another EEOC charge in August 2006 and this lawsuit in December of the same year. He was terminated approximately three months after the lawsuit was filed. (Ex. K).  Thus, the timing of these protected activities in relation to the date of termination are fully supportive of the inference that while the initial complaints to the EEOC and OSHA may have been insufficient in and of themselves, Mr. Taylor's subsequent protected activities were likely the straw that broke the camel's back.

In addition to the temporal proximity between his termination and the filing of his lawsuit, Mr. Taylor can present additional evidence to meet the "minimal" burden of establishing a causal connection.   Specifically, the facts in this case present a genuine issue of material fact regarding whether retaliatory harassment combined with actual adverse employment actions together are sufficient to give rise to the inference of causation. *See Jeffries*, 15 Fed. Appx. at 261.  In *Jeffries*, the Sixth Circuit found that in addition to actual adverse employment actions, other conduct, such as lack of support from her colleagues, could be taken into consideration when determining whether a

causal connection exists. *Id.  See also Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir. 1999) (holding that evidence of frequent discipline for trivial matters and unwarranted criticism of the plaintiff's work, *when viewed as a whole*, supported the jury's finding of retaliation).

In this case, Mr. Taylor experienced a variety of "retaliatory harassment" in addition to the adverse actions taken by the company after engaging in protected activity.  Most egregious was the appearance of the "DIE OSHA FAG" message under his office door; the company was never able to determine the identity of the perpetrator and whether or not he or she was a member of management. (Anderson Aff. ¶ 15).  The atmosphere of retaliation is also evidenced by Mr. Judd's threat to Mr. Taylor that "whenever he finds out who the whistleblower was he will take him off site and teach him a lesson." (Taylor Depo. at 337).  Finally, the refusal of Mr. Strasser and Ms. Anderson to investigate the incidents in which Mr. Taylor's car was vandalized indicates not only a lack of support for Mr. Taylor but also a tacit approval of the criminal behavior. (Anderson Depo. at 90-91; Strasser Depo. at 105).  Accordingly, this atmosphere of retaliation, combined with the adverse action, are adequate to demonstrate genuine issues of material fact regarding the existence of a causal connection between Plaintiff's engagement in protected activity and his ultimate termination.

Because reasonable minds could come to the conclusion that Mr. Taylor has established a prima facie case of retaliation under Title VII with regard to both his

formal discipline and his termination, this Court should find that Mr. Taylor has carried

his burden under the first prong of the McDonnel Douglas burden shifting test.[10]

### 2.  A reasonable jury could determine that H.B. Fuller's explanation for terminating Mr. Taylor was pretext for retaliation.

After Mr. Taylor satisfies the requirements to establish a prima facie case of

retaliation, a rebuttable presumption of retaliation is created and the burden then shifts

to H.B. Fuller to articulate a legitimate, non-retaliatory reason for taking the challenged

employment action." *Burdine*, 450 U.S. at 248.  In its motion, Defendant contends that

it satisfies this requirement, having based Mr. Taylor's discharge "solely on his

violations of the Company policy on confidentiality, his improper use of Fuller's

information technology to receive, view and transmit sexually explicit content for his

own prurient interest and his expressed desire to no longer work for Fuller and its

management." (Motion for SJ at 20).

Assuming for the purposes of this motion that Fuller's reason for terminating

Plaintiff was legitimate, the final step of the McDonnell Douglas framework shifts the

burden back to Plaintiff to show that the reasons offered by Defendant were not the true

reasons, but were pretext for discrimination. *Burdine*, 450 U.S. at 248.  Plaintiff can

make this showing in one of three ways: (1) demonstrating that the reasons offered had

no basis in fact, (2) demonstrating that the reasons did not actually motivate the

discharge, or (3) demonstrating that the reasons were insufficient to motivate the

discharge. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.

---

[10] Arguably, this showing should be adequate to enable Mr. Taylor to proceed past summary judgment. *See Avery*, 108 F.3d at 861 ("The finding that plaintiff has proven a prima facie case forces the defendant to proceed with its case.  It necessarily follows then, that the defendant is not entitled to judgment as a matter of law or summary judgment if a plaintiff has proven its prima facie case").

1994).  Mr. Taylor contends that H.B. Fuller's articulated reasons for his termination neither motivated the discharge nor were sufficient to motivate the discharge.

a.  A REASONABLE JURY COULD DETERMINE THAT H.B. FULLER'S REASONS FOR MR. TAYLOR'S  TERMINATION DID NOT ACTUALLY MOTIVATE HIS DISCHARGE.

Mr. Taylor can create a genuine issue of material fact regarding whether or not his termination was actually motivated by H.B. Fuller's proffered reasons by showing that the discriminatory/retaliatory motivation for his termination is more than likely the underlying reason for his discharge than Defendant's proffered ones.  *Gliatta v.* Tectum, 211 F.Supp2d 992, 1004 (S.D. Ohio 2002), *citing Manzer*, 29 F.3d at 1084.  Factors to consider in this analysis include whether H.B. Fuller was an "atmosphere of retaliation," temporal proximity between the protected action and any retaliatory conduct as well as any other evidence which a fact finder might reasonably believe demonstrates retaliatory animus. *See Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 549-551 (6th Cir. 2008).

In *Imwalle*, the 6th Circuit concluded that the plaintiff satisfied his burden of demonstrating that a reasonable fact-finder could conclude that his termination was more than likely the result of a retaliatory motive, basing much of his argument on the presence of a "retaliatory atmosphere" at his former place of employment.  *Id.*, 515 F.3d at 551.  As stated above, Mr. Taylor has also presented a genuine issue of material fact regarding whether H.B. Fuller was a "retaliatory atmosphere" in the year following the filing of his EEOC charges, OSHA complaints and lawsuit.

During this time, Mr. Taylor experienced a variety of retaliatory behavior from both his co-workers and management. Most significant was the appearance of the "DIE OSHA FAG" message under his office door; the company was never able to determine

the identity of the perpetrator and whether or not he or she was a member of management. (Anderson Aff. ¶ 15).  The atmosphere of retaliation is also evidenced by Mr. Judd's threat to Mr. Taylor that "whenever he finds out who the whistleblower was he will take him off site and teach him a lesson." (Taylor Depo. at 337).  The refusal of Mr. Strasser and Ms. Anderson to investigate the incidents in which Mr. Taylor's car was vandalized also indicates not only a lack of support for Mr. Taylor but an implied approval of the criminal behavior. (Anderson Depo. at 90-91; Strasser Depo. at 105).  Finally, Mr. Strasser's questionable decision to formally discipline Plaintiff for failing to report Mr. Shoemaker's death threat in a timely fashion also demonstrates management's participation and/or sanction of the retaliatory conduct. Because the combination of all of these incidents could clearly evidence a general atmosphere of resentment and/or retaliation at H.B. Fuller toward Mr. Taylor's exercise of protected conduct, a reasonable jury could find that Plaintiff's termination was at least partly motivated by a desire to retaliate. *See Imwalle*, 515 F.3d at 549.

Another factor in *Imwalle* which led the Sixth Circuit to conclude that the defendant's reason for termination could be a pretext for retaliation was the fact that the plaintiff's manager explicitly mentioned in his termination letter that the discharge was not meant to be discriminatory. *Id.* at 550.  The court found that "viewing this evidence in a light most favorable to the [plaintiff], the fact that [the defendant] made this statement about plaintiff's discrimination complaints at such a critical moment" raises questions about the true motivation for the termination. *Id.*

Like the defendant, *supra*, who had the plaintiff's protected activity at the forefront of his mind when making the termination decision, H.B. Fuller also explicitly considered Mr. Taylor's retaliation at a "critical moment." *See Id.*  Todd Trushenski

testified that during the phone conferences leading up to the decision to terminate Mr. Taylor's employment, the group was "conscious of making sure that we were not being— that we were conscious of not being retaliatory." (Trushenski Depo. at 54-55). He also admitted that there were concerns that Mr. Taylor's termination would appear retaliatory. (*Id.* at 55). The fact that fear of appearing retaliatory weighed so heavily on the minds of those making the decision regarding Mr. Taylor's employment also creates an issue of fact regarding whether or not the termination was *actually* retaliatory.

Another factor which contributes to the inference that H.B. Fuller's decision to terminate Plaintiff may have been retaliatory arises out of the fact that the company claims to have searched Mr. Taylor's computer in an effort to "preserve evidence" for the current litigation. Taylor Depo. at 329-330; Trushenski Depo. at 41-42). While this reasoning may appear legitimate on its face, the fact remains that H.B. Fuller had already made a ghost image of every computer in the Blue Ash facility during the preceding month. (Taylor Depo. at 329-330; Trushenski Depo. at 41-42). Accordingly, it is unclear why (a) a search of Mr. Taylor's computer would contribute in any way to the *preservation* of evidence which had already been preserved; and (b) H.B. Fuller believed that Mr. Taylor's hard drive was the only one that might have information relevant to the litigation, as it was the only hard drive subjected to a search. (Strasser Depo. at 74-75). Also contributing to the questionable nature of the search is the fact that the company was not looking for any specific documents or evidence on Plaintiff's computer (Strasser Depo. at 76). Furthermore, Chuck Smith testified that he is not aware of any instances in which an employee's computer was examined while he was still employed with the company. (Smith Depo. at 32). In light of the above, a genuine issue of material fact exists regarding whether the search of Mr. Taylor's computer was an effort to

"preserve evidence" or a witch hunt designed to unearth a reason to fire an otherwise exemplary employee who had become a thorn in H.B. Fuller's side.

Another factor which contributes to the inference that H.B. Fuller's reason for terminating Plaintiff is pretext for retaliation includes the fact that none of the managers who decided that Mr. Taylor's violations were sufficient to warrant termination actually *looked* at the policies themselves during the decision-making process. For instance, neither Susan Anderson nor Frank Strasser checked the relevant computer policies to determine which, if any, had been violated by the images on Mr. Taylor's computer. (Strasser Depo. at 82; Anderson Depo. at 65-66).  Mr. Trushenski admits that he did not personally make an effort to determine whether the allegedly "confidential" information transmitted by Mr. Taylor was actually confidential (Trushenski depo. at 46) and Ms. Anderson admits that she determined which information violated company confidentiality policies without the benefit of the policy in hand, without the opinion of the legal department and without looking at Mr. Taylor's confidentiality agreement. (See Anderson Depo. at 39-41, 40-48 and 67).  In fact, the company based its assessment of whether or not Mr. Taylor had violated the company's confidentiality policies based upon the knowledge Ms. Anderson had accrued during a 30 minute training course she had taken at some point during her employment with the company. (Anderson Depo. at 41).

The fact that the managers did not even bother to consult H.B. Fuller's rules and policies before deciding to terminate Mr. Taylor further contributes to Plaintiff's argument that H.B. Fuller was *searching* for a reason to terminate him in light of his protected activity.  This is particularly true considering the seeming significance of Mr. Taylor's discharge; he was a longtime employee with an overwhelmingly positive record

and one of the only exempt employees ever to be fired outside the company's progressive discipline system.

Accordingly, in light of (1) the retaliatory atmosphere at H.B. Fuller, (2) the fact that retaliation weighed heavily on the minds of those terminating Mr. Taylor, (3) the unwarranted and unnecessary search of Mr. Taylor's computer and (4) the failure of management to consult company rules and policies in its decision to terminate Mr. Taylor's employment, a reasonable jury could find that H.B. Fuller was motivated by a retaliatory animus in terminating Mr. Taylor's employment.   As a result, Defendant's motion should be denied.

> **b. A REASONABLE JURY COULD CONCLUDE THAT H.B. FULLER'S PROFFERED REASONS FOR MR. TAYLOR'S TERMINATION WERE INSUFFICIENT TO WARRANT DISCHARGE.**

In order to establish that H.B. Fuller's proffered reasons for Mr. Taylor's termination were insufficient to motivate discharge, Plaintiff can "show that other employees, particularly those that did not engage in the protected activity, engaged in substantially identical conduct to that which the employer contends motivated the discharge. *Gliatta*, 211 F.Supp.2d at 1004. For instance, in *Campbell*, the Sixth Circuit determined that an African American plaintiff could meet his burden to demonstrate pretext by showing that similarly situated Caucasian employees were not punished for violating a company policy for which he had received a reprimand. 211 Fed. Appx. at 346.   Because Plaintiff can present a genuine issue of material fact regarding whether each of the reasons was sufficient to warrant termination, summary judgment is inappropriate in this case.  *See Id.*

> i. A reasonable jury could find that H.B. Fuller's assertion that Mr.

Taylor improperly used its information technology to receive,
view and transmit sexually explicit content for his own prurient
interest is insufficient to warrant termination in this case.

In its motion, Defendant claims that the presence of a number of emails and
images on Mr. Taylor's computer was a "flagrant" violation of Company policy.
(Defendant's Motion for SJ at 23).   However, none of the managers who made this
decision were able during depositions to cite to *which* specific policy had been violated.
(Strasser Depo. at 82; Anderson Depo. at 65-66).   In addition to not consulting the
policy, H.B. Fuller also failed to consult Mr. Taylor regarding the presence of the emails
and images on his laptop and did not give him opportunity to explain that he never
solicited, invited or in any way encouraged any individual to send pornographic material
to his H.B. Fuller computer. (Taylor Aff. at ¶ 6, attached as Ex. M).   Management
similarly failed to contact the company's IT department to see if the emails and images
on the computer were necessarily there because Mr. Taylor put them there and or
solicited them. (Anderson Depo. at 12).

Furthermore, available evidence indicates that while Mr. Taylor was terminated
for having such content on his computer, other employees who had not engaged in
protected conduct received no discipline at all for the similar infractions.   *See Campbell,*
211 Fed. Appx. at 346.   (Taylor Aff. ¶ 4).   For instance, during his time at H.B. Fuller
Plaintiff viewed a number of women watching a computer video of a naked woman
playing the piano with her legs. (*Id.* at ¶ 3).   He also saw a co-worker, Steven Bellman
watching a sex scene on his work computer from the animated claymation movie
*American Ranger* in which the characters were copulating and engaging in other sexual
acts involving defecation and urination. (*Id.*)   On yet another occasion he witnessed
Dennis Judd viewing an image of a drunken, naked woman on his work computer.  (*Id.*).

Finally, Mr. Taylor saw Kevin Seymour viewing pictures of naked women on his work computer and Greg Campbell playing the rape scene from *Deliverance* over and over again on a loop. (*Id.;* Taylor Depo. at 170-172).  Despite the fact that he reported each of these incidents to management, to the best of Plaintiff's knowledge absolutely no disciplinary action was ever taken against them nor were any of their computers ever searched.  (*Id.; see also* Strasser Depo. at 85-88).  Accordingly, Mr. Taylor has clearly presented a genuine issue of material fact regarding whether he was treated differently than similarly situated employees who engaged in comparable conduct.

> ii.  A reasonable jury could find that H.B. Fuller's assertion that Mr. Taylor violated the company policy on confidentiality is insufficient to warrant termination in this case.

H.B. Fuller also attributes Mr. Taylor's termination to the fact that he sent allegedly "confidential" information to an outside email address in violation of company policy. (Defendant's Motion for SJ at 20).  However, this reason is insufficient to warrant termination for two reasons: (1) management did not take reasonable or adequate measures to determine whether or not the emails were actually in violation of company policy and (2) management was well aware of the fact that Mr. Taylor used a personal email account to transact H.B. Fuller business but never saw fit to warn him that he was potentially violating the policy prior to his termination from the company.

As stated above, Susan Anderson was responsible for determining which of Mr. Taylor's emails were in violation of the company's confidentiality policies.  (Anderson Depo. at 33, 36-37).  However, rather than directly consult the relevant guidelines, rules and procedures in order to responsibly ascertain which, if any, of the emails were in violation of company policy, she merely relied on her memory of what she had learned regarding the topic during a 30 minute training seminar she had taken at some

indefinite point in the past. (*Id.* at 39-41).  She made no comparison of any of the email content with the applicable rules and guidelines. (*Id.*)  Furthermore, although she contacted the legal department regarding the soundness of her interpretation of the policies, she did not wait to hear back from them before the decision to terminate Mr. Taylor was made. (*Id.* at 36-37, 40, 48).  She also admits now that some of the emails that she initially believed were "proprietary" were not. (*Id.* at 54).  This testimony, combined with the fact that no company policy specifically prohibits sending H.B. Fuller email to outside accounts (Anderson Depo. at 43) clearly indicates that a substantial issue of fact remains regarding whether Mr. Taylor's emails actually violated company policy.

Furthermore, management was aware that Mr. Taylor regularly sent emails concerning H.B. Fuller to the personal email account that he shared with his partner.  In fact, Mr. Taylor used the personal email account to correspond with H.B. Fuller management and other employees used this e-mail to communicate with him. (Taylor Aff. at ¶ 10).  Despite this knowledge, no member of management ever complained or communicated to Mr. Taylor that he should not use his personal address for business-related communications. (*Id.*).  This fact, combined with evidence that Mr. Taylor's emails may not even have violated the company's confidentiality policies, clearly establishes an additional genuine issue of fact regarding whether the alleged violation of the confidentiality policy were sufficient to warrant Mr. Taylor's termination.

      iii.  A reasonable jury could find that H.B. Fuller's assertion that Mr. Taylor expressed a desire to no longer work for Fuller and its management is insufficient to warrant termination in this case.

Nowhere in H.B. Fuller's policy does it state that all of its employees have to love, or even like, their jobs.  In fact, as reflected in the record, the company does not make

termination decisions based on expressions of discontent.  (Anderosn Depo. at 79-80). That concession effectively invalidates this stated basis for Plaintiff's termination. Moreover, Todd Trushenski testified that Taylor did not act in any way that would indicate he was lacking competency or disloyalty. (Trushenski Depo. at 53). Accordingly, a genuine issue of material fact exists regarding whether Mr. Taylor's "expressed desire to no longer work for Fuller and its management" is insufficient to warrant termination in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny H.B. Fuller's Motion for Summary Judgment in its entirety.


Respectfully submitted,

**LAW OFFICE OF MARC MEZIBOV**

/s/ Marc D. Mezibov
MARC D. MEZIBOV (OH Bar No. 0019316)
SUSAN M. LAWRENCE (OH Bar No. 0082811)

401 East Court Street, Suite 600
Cincinnati, OH 45202
Telephone:  (513) 621-8800
Fax: (513) 621-8833
mmezibov@mezibov.com
slawrence@mezibov.com

**Trial Counsel for Plaintiff Sidney Watts Taylor**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was sent via the

ECF filing system to Don Mooney, Esq. on this 16th day of June, 2007.


_____s/ Marc D. Mezibov_____
MARC D. MEZIBOV (OH Bar No. 0019316)